**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.W.**

**No. 20-0877** (Mercer County 18-JA-120-DS)

**MEMORANDUM DECISION**

Petitioner Father C.H., by counsel P. Michael Magann, appeals the Circuit Court of Mercer County's September 25, 2020, order terminating his parental rights to R.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Catherine Bond Wallace, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights and in terminating his post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed a child abuse and neglect petition against R.W.'s mother and J.B.-2 regarding their child, J.B.-1 who is a younger half-sibling of R.W. The DHHR alleged that J.B.-2 was charged with several criminal offenses including operating a methamphetamine laboratory, counterfeiting, obstruction, battery on a police officer, improper registration, and child neglect with risk of serious bodily injury. The DHHR also alleged that the mother had previously placed R.W. in the guardianship of the maternal grandmother, who was named as a nonabusing party. According to the petition, the grandmother obtained guardianship of R.W. in June of 2013.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and his father share the same initials, they will be referred to as J.B.-1 and J.B.-2, respectively, throughout the memorandum decision.

Petitioner was named as the father of R.W. in the 2018 petition. The DHHR also submitted to the circuit court the family court order appointing the grandmother as R.W.'s guardian in June of 2013. That family court order lists petitioner's whereabouts as unknown and provides that petitioner had not been involved in then four-year-old R.W.'s life. The DHHR's 2018 petition did not list any new allegations of abuse and neglect against petitioner. In J.B.-2's case, the DHHR eventually gave custody of J.B.-1 to the maternal grandmother as well.

The DHHR filed an amended abuse and neglect petition in April of 2019 naming petitioner and alleging that he had been incarcerated since February of 2019 for violating the terms of his home incarceration.[2] The DHHR also alleged that petitioner failed to support R.W. emotionally, socially, or financially, and had had no contact with the child since 2013. According to the petition, petitioner blamed the grandmother for his absence and stated that she prevented him from contacting R.W. because of his prior traumatic brain injury stemming from an automobile accident and history of drug abuse. According to the petition, the grandmother denied preventing petitioner from seeing the child.

The circuit court held an adjudicatory hearing in August of 2019 wherein petitioner stipulated to abusing and neglecting R.W. because of his drug usage and incarceration. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing and neglecting parent, and granted him a post-adjudicatory improvement period.

The next month, the circuit court held a review hearing wherein the DHHR informed the circuit court that petitioner was awaiting a neuropsychological and parental fitness evaluation regarding his traumatic brain injury. The circuit court held additional review hearings in December of 2019 and January of 2020 where it continued placement of R.W. with the grandmother. The circuit court held another hearing in February of 2020 where it terminated the mother's parental rights to R.W. due to her failure to participate in the proceedings. At that hearing, R.W.'s newly appointed guardian ad litem expressed her concerns to the court that petitioner and R.W. had little contact during the child's life. The circuit court scheduled a dispositional hearing for March of 2020. However, the dispositional hearing was delayed due to the COVID-19 pandemic and resulting judicial emergency.

The results of petitioner's neuropsychological evaluation were submitted to the circuit court in May of 2020. According to that report, petitioner suffered from areas of substantial neurocognitive limitation, including an inability to complete simple tasks. The report noted that petitioner admitted to being arrested at least ten times, and was previously convicted and sentenced to two to nine years in prison for prescription fraud. The report noted that petitioner eventually served six and a half years of that sentence after he twice violated parole because of positive drug screens. The report also detailed that petitioner had severe impairment when completing more complex tasks and that he struggled with "more complex problem solving, adaptation to changing task demands, organizing and applying organizing principles, being systematic, and maintaining focus."

---

[2]Petitioner was later released from incarceration during the proceedings.

The guardian ad litem submitted a home study and report in June of 2020 which noted that R.W. was raised almost exclusively by her grandmother, who had been the child's guardian since the child was four years old. At the time of the guardian's report, the child was twelve years old. The guardian's report explained that R.W. was performing well academically in the grandmother's care and was involved in extracurricular activities. The report also indicated that the child did not recall any contact with petitioner but was aware of his drug usage and automobile accident. According to the report, R.W. did not want regular contact or to live with petitioner due to his decision to have no part in her life. The report indicated that the child would be reluctantly open to meeting petitioner if visitation was supervised and she knew he was no longer abusing drugs. The guardian concluded the report by recommending that petitioner's parental rights be terminated and the grandmother be allowed to adopt the child.

The DHHR filed a case plan recommending the termination of petitioner's parental rights in September of 2020. According to the case plan, petitioner failed to have consistent communication with R.W. and struggled with substance abuse for several years. The DHHR noted that petitioner's lack of communication with the child and drug usage preceded his automobile accident and resulting traumatic brain injury. According to the case plan, the DHHR did not develop goals for petitioner because any such goals were dependent on the recommendations of the neuropsychological evaluation.

After multiple continuances, the circuit court held a final dispositional hearing in September of 2020. At the hearing, the psychologist who conducted petitioner's neuropsychological evaluation testified that petitioner had likely reached his maximum medical improvement with respect to his traumatic brain injury and that petitioner believed he was functioning at a higher level than his actual level of functioning. The neuropsychologist further testified that petitioner lacked insight as to his limitations and had poor decision making, as shown by his prior arrests, incarceration, and substance abuse. Next, a service provider testified to petitioner's positive drug screens. Finally, petitioner testified that he would be willing to participate in any services offered by the DHHR. However, petitioner acknowledged that he did not have a relationship with R.W. and that the child was in a stable and suitable home.

After hearing the evidence, the circuit court found that petitioner had prior opportunities to correct his behavior, but that he continued to abuse controlled substances and was incarcerated for various periods of time. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Petitioner now appeals the September 25, 2020, dispositional order terminating his parental rights.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

_____

[3]The mother's parental rights were also terminated below. The permanency plan for the child is guardianship by her grandmother.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in refusing him any services in connection with his post-adjudicatory improvement period. We find, however, that petitioner is entitled to no relief. Petitioner is correct that, unless certain conditions exist, the DHHR is required to make "reasonable efforts to preserve and reunify the family." W. Va. Code § 49-4-604(b)(6)(C)(iv). Further, "[i]n determining whether or not parental rights should be terminated, the court shall consider the efforts made by the department to provide remedial and reunification services to the parent." *Id.* at (b)(6)(C). What petitioner fails to recognize, however, is that the record shows that the DHHR's attempts to provide him with services began as early as the filing of the amended petition in May of 2018. By petitioner's own admission, he suffers from certain limitations that the DHHR alleged impacted his ability to properly parent the child. In order to accommodate this issue, the DHHR arranged for petitioner to undergo a neuropsychological evaluation. While petitioner may take issue with the extent of the DHHR's services, we find that they were sufficient to satisfy the requirement that the DHHR make reasonable efforts to reunify petitioner with his child.

Indeed, petitioner concedes that "it might have been difficult" to establish goals to remedy the conditions of abuse and neglect because of his traumatic brain injury, although he asserts that it was "not necessarily impossible." What petitioner fails to recognize, however, is that the Court has instructed as follows:

"Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009). Petitioner argues that the circuit court failed to adequately determine whether he could function with long-term assistance, especially since the psychologist who performed petitioner's psychological evaluation refrained from offering an opinion regarding petitioner's parental fitness, and that such a definitive opinion

4

was necessary before terminating his parental rights. We find that such a conclusion from the evaluator was unnecessary, however, given that the limitations the report identified were clearly sufficient to establish that petitioner was incapable of caring for the child and that additional services would be insufficient to overcome these issues. While refraining from addressing his parental fitness, petitioner's evaluation nonetheless concluded that he struggled "in dealing with relatively simple visual tasks" and was "severely impaired" when the task was "more complex and requires more genitive flexibility." The evaluation also concluded that petitioner struggled with working memory, which "refers to the ability to keep information in mind and work with it for the duration of a task." While petitioner argues that he testified he was willing to participate in parenting and life skills classes, therapy, drug screens, and any other services in order to have a relationship with the child, the record shows that these services were not appropriate for petitioner, given the results of his evaluation. Further, the neuropsychologist who evaluated petitioner testified that petitioner had likely reached his maximum medical improvement with respect to his traumatic brain injury and that petitioner believed he was functioning at a higher level than his actual level of functioning. The neuropsychologist further testified that petitioner lacked insight as to his limitations and had poor decision making, reflected in his prior arrests, incarceration, and substance abuse. As the DHHR set forth below, it refrained from offering services prior to the evaluation so that it could incorporate the results of the evaluation into any later services so that they were tailored to petitioner's abilities. However, after the evaluation, the DHHR indicated that there were simply no appropriate additional services that would be of benefit to petitioner. As such, the court complied with the direction in syllabus point 4 of *Miranda T.*, that a determination as to whether petitioner could function with the aid of long-term services be made quickly in order to effectuate permanency for the child.

It is also important to note that, to the extent petitioner argues that the DHHR failed to provide identifiable terms and goals in its family case plan and failed to determine what services could be provided to assist petitioner to improve his parenting skills, he cites to no portion of the appendix record where he raised any objection to the case plan or its contents. As such, even if the Court were to find that the DHHR's case plan were defective, petitioner has waived this issue on appeal.

Finally, petitioner claims that he should have been granted a less-restrictive disposition to the termination of his parental rights. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the court made the necessary findings based upon substantial evidence. The record establishes that petitioner was uninvolved in the child's life since 2013 and consistently showed an inability to demonstrate the basic elements of proper parenting or to show any substantial progress. Further, petitioner did not

take care of the child and abused drugs even prior to his automobile accident. Indeed, the neuropsychologist's report noted that petitioner admitted to being arrested at least ten times and previously being convicted and sentenced to two to nine years in prison for prescription fraud. The report also noted that petitioner ended up serving six and a half years of that sentence after he twice violated parole because of positive drug screens. Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 25, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6